In The

## *Court of Appeals*

## *Ninth District of Texas at Beaumont*

_____

## NO. 09-23-00047-CV
_____

## DOCKSIDE MARINE, L.L.C., APPELLANT

## V.

## JOSHUA WALKER, BRYAN BROWN, AND HTX WATERSPORTS, L.L.C., APPELLEES

**On Appeal from the 457th District Court**
**Montgomery County, Texas**
**Trial Cause No. 20-06-07358-CV**

## MEMORANDUM OPINION

Dockside Marine, L.L.C. ("Dockside") appeals the trial court's grant of a Traditional and No-Evidence Summary Judgment for Joshua Walker ("Walker"), HTX Watersports L.L.C. ("HTX"), and Bryan Brown ("Brown") ("collectively Appellees). In five issues, Dockside challenges the trial court's grant of summary judgment on the following causes of action: theft of property under the Texas Theft Liability Act; conversion; breach of fiduciary duty; tortious interference with an

1

existing contract; and civil conspiracy. As explained below, we affirm in part, and reverse and remand in part.

## I. BACKGROUND

Dockside Marine is a boat dealership in Lake Conroe that was granted an "exclusive license" to sell MasterCraft boats in the Greater Houston area. According to Dockside, it had an exclusive distributorship agreement with MasterCraft Boat Company ("MasterCraft") until 2022 to sell MasterCraft boats in the Greater Houston area at its Lake Conroe dealership. In 2009, Dockside hired Walker as a salesperson, and in 2015, promoted him to General Manager. In early 2020, Walker resigned as Dockside's General Manager. After resigning from Dockside, Walker was hired as a General Manager at the newly formed dealership HTX, formed by Brown. Before forming HTX, Brown had been a customer of Dockside. In March 2020, MasterCraft sent notices of default to Dockside for "refusal to pay for the Boats and Trailers that Dockside ordered from MasterCraft." Then, in May 2020, MasterCraft terminated its relationship with Dockside and contracted with HTX to be its exclusive MasterCraft dealer. Dockside alleged that HTX began advertising it was selling MasterCraft boats two days after MasterCraft terminated its relationship with Dockside.

In its first amended petition, Dockside alleges that after Walker resigned, two Dockside customers reported that Walker had approached them, while still

2

employed as Dockside's General Manager, about opening a new boat dealership. Dockside claims that Walker told the customers he would take the MasterCraft account with him when he left Dockside. Dockside contends that before Walker resigned, he had phone calls with Brown, often lengthy. Dockside also alleges that these calls were notable because they occurred right after Walker had a phone conversation with a MasterCraft representative. Dockside also contends that while still working as Dockside's General Manager, Walker actively solicited two employees to leave Dockside and work at HTX.

Dockside maintains that in late 2019 through early 2020, they were actively negotiating with MasterCraft, regarding rebates MasterCraft owed Dockside when Dockside received Mastercraft's May 2020 notice terminating Dockside's distributorship agreement. During negotiations that involved the notice, Dockside claimed that it was required to temporarily close because of the COVID-19 pandemic. Dockside alleged that the shutdown tied to the COVID-19 pandemic also "significantly impaired" these negotiations. While closed for business during the pandemic, Dockside contends that it sought to delay the delivery of preordered MasterCraft boats given the economic conditions that existed at that time. Dockside asserts that during the pandemic and while Walker was acting as its General Manager that he either failed to communicate or intentionally did not delay the delivery of the boats, to his advantage.

3

Dockside also alleges that Walker, while employed at Dockside, allowed MasterCraft to repossess two non-MasterCraft boats (two Nautique boats).[1] Dockside pleaded, "By allowing MasterCraft to unlawfully take possession of these two boats, Walker created an allegation that Dockside breached its financing agreement with respect to the boats with a third-party financer and the potential risk of losing an important source of financing based on incorrect information." Dockside alleges that while its General Manager, Walker "knowingly and intentionally injur[ed] his principal with whom he owed [a] strict duty of loyalty, among other fiduciary duties." Dockside also alleges that "Brown was familiar with Walker's position as General Manager, and therefore knew or should have known that Walker's actions were wholly improper. As Brown is a member of HTX, his knowledge is imputed to HTX."

## II. PROCEDURAL HISTORY

In its Amended Petition, Dockside sued Walker, Brown, and HTX. As to Walker, Dockside alleged the following theories:

- Breach of Fiduciary Duty,
- Tortious Interference with Existing Contract,
- Theft of Property under the Theft Liability Act,
- Conversion, and
- Conspiracy

As against Brown and HTX, Dockside alleged the following claims:

---

[1] Nautique Boat Company was another boat manufacturer sold by Dockside.

- Knowing Participation in Breach of Fiduciary Duty,
- Tortious Interference with Existing Contract,
- Theft of Property under the Theft Liability Act,
- Conversion, and
- Conspiracy

In response, Walker filed a First Amended Answer and Original Counterclaim, denying all allegations. In the response, Walker alleges that he was a longtime employee of Dockside, and that he never had a non-competition agreement with Dockside. Walker also claimed that in April 2020, Dockside instructed him to take titles for the two Nautique boats to a bank and using the titles as collateral, get loans. Yet, according to Walker's response, the two Nautique boats already had third-party liens on them, liens that MasterCraft had authorized. Walker alleged that when he refused to participate in "bank fraud," he told MasterCraft the boats in Dockside's inventory were "double-liened," so he resigned. Dockside's president denied that the two Nautique boats were "double-liened." According to Walker, MasterCraft terminated its relationship with Dockside after discovering Dockside's fraud.

After Dockside sued, Walker filed a counterclaim against Dockside for breach of contract, quantum meruit, unjust enrichment, and money had and received. Brown and HTX each filed Original Answers and Requests for Disclosures. Additionally, Walker, Brown, and HTX alleged the affirmative defenses of unclean hands, estoppel, laches, waiver, privilege, justification, effective consent, failure to

mitigate, and Dockside's own acts and omissions caused or contributed to its damages.

Walker, Brown, and HTX jointly filed a No-Evidence and Traditional Motion for Partial Summary Judgment. The exhibits filed to support the combined motion included: 1) Excerpts from the June 23, 2021 Deposition of Dockside Marine, LLC Corporate Representative Larry Paul Carlson Jr.; 2) March 19, 2020 Notice of Default Under MasterCraft Dealership Agreement; 3) Texas Secretary of State Website Printout; 4) April 17, 2020 Notice of Force Majeure Event and Response to Notice of Default Under MasterCraft Dealership Agreement; 5) May 1, 2020 Notice of Additional Defaults Under Dealership Agreement and Response to Request for Alternative Dispute Resolution; 6) May 20, 2020 Notice of Termination of MasterCraft Dealership Agreement; 7) Affidavit of Matthew McDevitt with attachments; 8) Excerpts from the June 1, 2022 Deposition of Matthew McDevitt and selected Exhibits thereto; 9) Excerpts from the September 28, 2021 Deposition of Joshua Walker; 10) and Excerpts from the September 20, 2021 Deposition of Bryan Brown.

Dockside responded to Appellees' motion for No-Evidence and Traditional Partial Summary Judgment. Dockside supported its response with the following evidence:1) McDevitt's deposition; HTX's 2020 tax filing; Affidavit of Dockside's President and Chief Financial Officer, L.P. Carlson; 2) Walker's phone and text

records; 3) a screenshot of a text message Walker sent regarding "double floored"[2] inventory; 4) emails between McDevitt and Wells Fargo regarding the two Nautique boats; 5) and Manufacturer's Statement of Origin (MSOs)[3] and first assignments for the two Nautique boats.

On November 22, 2022, the trial court granted Walker, Brown, and HTX's combined No-Evidence and Traditional Motion for Partial Summary Judgment.[4] Dockside filed a motion for new trial, which the trial court denied. This appeal followed.

### III. STANDARD OF REVIEW

We review grants of summary judgment de novo. *Cantey Hanger, LLP v. Byrd*, 467 S.W.3d 477, 481 (Tex. 2015). In our review we take as true all evidence favorable to the nonmovant, indulge every reasonable inference in favor of the nonmovant, and resolve any doubts in the nonmovant's favor. *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005). The defendants filed a combined traditional and no-evidence summary judgment motion. *See* Tex. R. Civ. P. 166a(c),

---

[2] According to Dockside's Larry Paul Carlson Jr., double flooring is defined as a boat that is invoiced by two different floor plan companies at once or using the same boat twice as collateral.

[3] An MSO is a Manufacturers Statement of Origin provided to a buyer of a watercraft.

[4] In December 2022, Walker filed a Notice of Nonsuit without Prejudice and Motion for Entry of Final Judgment in which he nonsuited his counterclaims, and the trial court signed an Order dismissing all counterclaims.

(i). When a party files a hybrid summary judgment motion on both no-evidence and traditional grounds, we first consider the trial court's no-evidence summary judgment. *First United Pentecostal Church of Beaumont v. Parker*, 514 S.W.3d 214, 219 (Tex. 2017) (citing *Ford Motor Co. v. Ridgway*, 135 S.W.3d 598, 600 (Tex. 2004)). If the nonmovant fails to meet its burden under the no-evidence motion, we need not address issues related to the traditional summary judgment motion. *Id.* (citing *Merriman v. XTO Energy, Inc.*, 407 S.W.3d 244, 248 (Tex. 2013)).

We review no-evidence motions under the same legal sufficiency standard as a directed verdict. *Painter v. Amerimex Drilling I, Ltd.*, 561 S.W.3d 125, 130 (Tex. 2018). Under this standard, the nonmovant has the burden to produce more than a scintilla of evidence to support each challenged element of its claims. *Id.* If the nonmovant does not file a timely response to the no-evidence motion for summary judgment, the trial court must grant the motion provided it meets the requirements of Rule 166a(i). *See* Tex. R. Civ. P. 166a(i) (stating that the trial court must grant a no-evidence motion for summary judgment "unless the respondent produces summary judgment evidence raising a genuine issue of material fact[]"); *Helena Chem. Co. v. Cox*, 664 S.W.3d 66, 72 (Tex. 2023). A genuine issue of material fact exists if the evidence "'rises to a level that would enable reasonable and fair-minded people to differ in their conclusions.'" *Parker*, 514 S.W.3d at 220 (quoting *Merrell Dow Pharms., Inc. v. Havner*, 953 S.W.2d 706, 711 (Tex. 1997)). Evidence does not

create an issue of material fact if it is "'so weak as to do no more than create a mere surmise or suspicion'" that the fact exists. *See id*. (citing *Kia Motors Corp. v. Ruiz*, 432 S.W.3d 865, 875 (Tex. 2014)).

To prevail on a traditional motion for summary judgment, a movant must establish that no genuine issue of material fact exists, and the movant is entitled to judgment as a matter of law. Tex. R. Civ. P. 166a(c); *Point Energy Partners Permian, LLC v. MRC Permian Co.*, 669 S.W.3d 796, 804 (Tex. 2023); *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009). Summary judgment is appropriate if the movant conclusively negates at least one essential element of the plaintiff's claim. *Painter*, 561 S.W.3d at 130; *Keller v. Legend Home Corp.*, No. 09-17-00199-CV, 2019 WL 2292331, at *5 (Tex. App.— Beaumont May 30, 2019, pet. denied) (mem. op.).

When the trial court does not specify the basis for its summary judgment, the appealing party must show it is error to base it on any ground asserted in the motion. *Star-Telegram, Inc. v. Doe*, 915 S.W.2d 471, 473 (Tex. 1995). We must affirm the summary judgment if any of the movant's theories has merit. *See id*. We will now consider whether any of the grounds asserted by Dockside support the summary judgment. *See id.*

## IV. ANALYSIS: ISSUES ONE AND TWO

On appeal, Dockside argues that the trial court erred in granting the Appellees' No-Evidence and Traditional Summary Judgment because genuine issues of material fact exist as to whether Dockside owned the two Nautique boats taken by MasterCraft in 2020. In its Amended Petition, Dockside alleged that it is entitled to damages under the Texas Theft Liability Act and for conversion from Walker, Brown and HTX for unlawful appropriation of the two Nautique boats in May 2020. Since both issues one and two involve the same theft allegation, we will review them together. We begin our review with the no evidence summary judgment.

### A. Texas Theft Liability Act

The Texas Theft Liability Act provides that "[a] person who commits theft is liable for the damages resulting from the theft." Tex. Civ. Prac. & Rem. Code Ann. § 134.003(a). The Act defines theft as "unlawfully appropriating property or unlawfully obtaining services[,]" as described in certain Penal Code sections. *Id*. § 134.002(2). A person commits theft "if he unlawfully appropriates property with intent to deprive the owner of property. . . . Appropriation of property is unlawful if: (1) it is without the owner's effective consent; . . . [or] the property is stolen and the actor appropriates the property knowing it was stolen by [someone else] . . . ." Tex. Penal Code Ann. § 31.03(a), (b). The Theft Liability Act sets out the damages recoverable by the victim of theft. Tex. Civ. Prac. & Rem. Code Ann. § 134.005.

10

**B. Conversion**

"Conversion is the wrongful assumption and exercise of dominion and control over the personal property of another to the exclusion of, or inconsistent with, the owner's rights." *Burns v. Rochon*, 190 S.W.3d 263, 267-68 (Tex. App.—Houston [1st Dist.] 2006, no pet.) (citing *Waisath v. Lack's Stores, Inc.*, 474 S.W.2d 444, 447 (Tex. 1971)); *see also Ramin' Corp. v. Wills*, No. 09-14-00168-CV, 2015 WL 6121602, at *11 (Tex. App.—Beaumont Oct. 15, 2015, no pet.) (mem. op.). To establish a claim for conversion of personal property, a plaintiff must prove: (1) the plaintiff owned or had possession of the property or was entitled to possession; (2) the defendant unlawfully and without the plaintiff's authorization assumed and exercised control over the property to the exclusion of, or inconsistent with, the plaintiff's rights as an owner; (3) the plaintiff demanded return of the property; and (4) the defendant refused to return the property. *Ramin' Corp.*, 2015 WL 6121602, at *11; *Burns*, 190 S.W.3d at 268.

**C. Dockside presented more than a scintilla of evidence creating a genuine issue of material fact on the Theft Liability Act and conversion claims.**

Here, Dockside contends it sufficiently established the necessary elements for his conversion and Texas Theft Liability Act claims, which are tied to the two Nautique boats. In August 2019, Dockside sold MasterCraft two Nautique boats for a combined price of $229,000. The parties do not dispute that the Augst 2019 transaction occurred, or that in December 2019, MasterCraft sold the two Nautique

boats back to Dockside after MasterCraft had used the boats. In April 2020 and based on information it received from Walker, MasterCraft accused Dockside of not paying for the two Nautique boats by attempting to "double-floor[]" the two boats. MasterCraft also relied on the information it received from Walker when it decided to "repossess" the two Nautique boats.[5] When MasterCraft took the two Nautique boats from Dockside, Dockside had the MSOs for the Nautique boats. Appellees contend that the fact that Dockside had the MSOs in its possession is not evidence of ownership of the two Nautique boats because Dockside had not paid MasterCraft all that it owed MasterCraft for the boats. On April 14, 2020, MasterCraft claims it repossessed the two Nautique boats. On April 16, 2020, Walker resigned as

---

[5] Attached to its summary judgment motion was a screenshot of a text message from Walker in which Walker texted the following:

If this shit double floored may not matter if 8 boats bought[.]

Kinda interested to see[.]

I see the nautiques on wells floor plan. They emailed me a xl file to do a self floor check within five days[.]

LP said don't respond and make sure to lock the doors and gate. We are missing 3-4 boats on there.

The nautiques you own[.]

So we have buyers orders showing sold to you in Dec and not paid off there[.]

Dockside's General Manager. Dockside alleges that in May 2020, Walker signed the MSOs for the Nautique boats over to HTX. In a deposition attached to its summary judgment motion, Walker, agrees that his signature is on the MSOs, but then he denies that he signed them on the May 2020 transfers. That creates a material fact issue due to the in inconsistency in his testimony.

On appeal, Dockside argues that its production of the two Nautique boat MSOs executed on a form prescribed by the Texas Department of Parks and Wildlife in compliance with the Water Safety Act, "create[s] a presumption of ownership in the party named on the title certificate." Thus, Dockside contends this evidence raises an issue of material fact making summary judgment improper on its claim for conversion and its claim under the Theft Liability Act. *See* Tex. Parks & Wild. Code Ann. § 31.045(b) ("The ownership of a new vessel or a new outboard motor is evidenced by a manufacturer's or an importer's certificate executed on a form prescribed by the department."); see also *Comerica Acceptance Corp. v. Dal. Cent. Appraisal Dist.*, 52 S.W.3d 495, 498 (Tex. App.—Dallas 2001, pet. denied) (noting that under Texas Parks and Wildlife Code 31.036, "certificates of title create a presumption of ownership in the party named on the title certificate[]").

Appellees argue that evidence of title is not ownership. Appellees point to the Certificate of Title Act for motor vehicles to show similar provisions that provide that possession of MSOs creates "a presumption of ownership" only, and transfer of

13

title must be "effectuated by complying with the provisions outlined in the various statutes relating to certificates of title." *See* Tex. Transp. Code Ann. § 501.071. Even so, the Water Safety Act covers watercraft MSOs, and "[t]here is no indication that the legislature intended the automobile Certificate of Title Act to apply to boat and outboard motor transactions." *Pierce*, 899 S.W.2d at 370. Unlike the Certificate of Title Act, the Water Safety Act does not require a certificate of title to be properly executed for title to pass. *Compare* Tex. Transp. Code Ann. § 501.071, *with* Tex. Parks & Wild. Code Ann. § 31.045(b). We are unpersuaded that the Water Safety Act requires a properly executed certificate of title to be valid. *See Pierce*, 899 S.W.2d at 369-70. Additionally, Appellees provided evidence in the form of McDevitt's deposition testimony that historically Dockside sold competitor boats to MasterCraft for a few months for "on the water training," then MasterCraft sold the boats back to Dockside. McDevitt testified that MasterCraft would "never officially title [the boats]," but Dockside would give them the MSOs, "which is a legal ownership document[.]" McDevitt later stated that an MSO is not proof of ownership, "in its entirety. I mean our position was we paid for the boats. We had not been paid back for the boats. Yet, we still held the MSO's. So consequently, we owned the boats." In their motion for summary, Appellees also acknowledge that other differences like failing to execute an MSO does not render the sale void, even though a validly executed MSO may be some evidence of a boat's ownership. *See*

14

Tex. Parks & Wild. Code Ann. §§ 31.036-.037, 31.045, and 31.127. (sections. .036 and .045 provide that title is evidence of ownership; section .037 requires title transferring ownership be filed within 20 days of sale; and section .127 provides a penalty of a class C misdemeanor offense for the violation of any provision of this Chapter).

Once Walker, Brown, and HTX filed their no-evidence motion for summary judgment, the burden shifted to Dockside to present more than a scintilla of evidence defeating the no-evidence challenge to the ownership element. *See* Tex. R. Civ. P. 166a(i); *Painter*, 561 S.W.3d at 130. Here, the summary judgment evidence shows that Dockside had two Nautique MSOs in its possession in April 2020 when MasterCraft took the boats from the Dockside dealership, and MasterCraft was not listed as a lienholder or transferee on those MSOs. Viewing the summary judgment evidence in the light most favorable to the nonmovant, we conclude a genuine issue of material fact exists regarding the ownership of the two Nautique boats and that the details on and possession of the MSOs, along with the testimony presented from witnesses with knowledge of the standard practice used by the parties regarding the two boats, constitutes more than a scintilla of evidence of ownership and defeats the no-evidence motion for summary judgment. *See Parker*, 514 S.W.3d at 219-20.

As to the traditional motion for summary judgment, based on the record before us in this case, we also conclude this same evidence creates a genuine issue of

material fact that defeats Appellees' traditional motion for summary judgment on Docksides claims for conversion and claims under the Theft Liability Act. *See* Tex. R. Civ. P. 166a(c) (setting forth standard for traditional motion for summary judgment); *Mann*, 289 S.W.3d at 848. Therefore, the trial court erred in granting summary judgment under both the traditional and no-evidence standard on those claims. *See* Tex. R. Civ. P. 166a(c), (i).

We sustain Dockside's first and second issues.

## V. ISSUE THREE

In its third issue, Dockside alleges that the trial court erred by granting Appellees' No-Evidence and Traditional Summary Judgment on its breach of fiduciary duty claim because issues of material fact exist as to whether: (1) Walker breached his fiduciary duty as an employee of Dockside; and (2) Brown and HTX knowingly participated in Walker's breach of fiduciary duty. On appeal, Dockside argues that Walker's actions while employed as Dockside's General Manager breached his duty because "a fiduciary relationship exists between an employee and an employer, an employee has a duty to act primarily for the benefit of his employer in matters connected with his employment." Additionally, his actions transferred to HTX and Brown when Walker became employed as General Manager of HTX, his knowledge of breaches of fiduciary duties, "transfer[red] to HTX constituted

16

knowing participation of HTX and Brown in the breaches of fiduciary duty by Walker."

## A. Breach of Fiduciary Duty

To prevail on a claim of breach of fiduciary duty, a plaintiff must prove: (1) the existence of a fiduciary duty, (2) breach of the duty, (3) causation, and (4) damages. *Parker*, 514 S.W.3d at 220. An "employee may not (1) appropriate the company's trade secrets; (2) solicit the employer's customers while still working for the employer; (3) solicit the departure of other employees while still working for the employer; or (4) carry away confidential information, such as customer lists." *Diakiw v. Stites Mgmt., L.L.C.*, No. 14-22-00439-CV, 2023 WL 8041403, at *9 (Tex. App.—Houston [14th Dist.] Nov. 21, 2023, pet. filed). That said, under Texas law, an employee does not owe an absolute duty of loyalty to his employer. *See Johnson v. Brewer & Pritchard*, P.C., 73 S.W.3d 193, 201 (Tex. 2002). But, when a fiduciary relationship exists between an employee and employer, the employee does have a duty to act primarily for the benefit of the employer in matters connected with her agency. *See id*. at 200; *Wooters v. Unitech Int'l, Inc*., 513 S.W.3d 754, 762-63 (Tex. App.—Houston [1st Dist.] 2017, pet. denied). Absent a contrary agreement, an at-will employee may plan to compete with his employer, may take active steps to do so while still employed, may secretly join with other employees in a plan to compete with the employer, and has no general duty to disclose such plans. *See Johnson*, 73

17

S.W.3d at 201; *see also Abetter Trucking Co. v. Arizpe*, 113 S.W.3d 503, 510 (Tex. App.—Houston [1st Dist.] 2003, no pet.). Walker, as an at-will employee, was within his rights to plan, or to discuss with others, planning to open his own business to compete with his Dockside without notifying Dockside, his current employer. *See Johnson*, 73 S.W.3d at 201. That said, the at-will employee "may not act for his future interests at the expense of his employer or engage in a course of conduct designed to hurt his employer." *McCullough v. Scarborough, Medlin & Assocs., Inc.*, 435 S.W.3d 871, 904 (Tex. App.—Dallas 2014, pet. denied) (citation omitted).

The evidence submitted with the response to the no evidence summary judgment fails to show that Walker appropriated the company's trade secrets or carried away confidential information, such as customer lists, from Dockside. But, there was more than a scintilla of evidence that Walker may have solicited Dockside's customers while still working for Dockside and that he may have solicited the departure of other Dockside employees while still working for Dockside.

**B. MasterCraft and Walker were entitled to a summary judgment on these claims because Dockside failed to create a genuine issue of material fact on Walker's breach of fiduciary duty claim.**

In response to the traditional motion for summary judgment, Dockside alleges that Walker had a fiduciary duty as General Manager and that he breached his fiduciary duty by: (1) signing the two Nautique boat MSOs after he resigned; (2)

18

soliciting customers to invest in a new dealership while employed as Dockside's General Manager; (3) destroying Dockside's relationship with MasterCraft, including lying about the "double flooring" of inventory to destroy Dockside's professional relationships, working to take away the MasterCraft contract from Dockside, and chasing away a Dockside sales representative over a personal dispute; and (4) soliciting Dockside employees to leave Dockside and work at HTX. Dockside's Summary Judgment Response attached evidence of Walker's alleged misconduct as General Manager in the form of affidavits by L.P. Carlson and Larry Carlson, excerpts from Walker's deposition, a screen shot of the Walker Text Message to MasterCraft employee McDevitt, McDevitt's email to Wells Fargo dated April 14, 2020, and Notice of Business Record Filings.

As noted above, in reviewing a breach of fiduciary duty involving an employer and employee relationship, an "employee may not (1) appropriate the company's trade secrets; (2) solicit the employer's customers while still working for the employer; (3) solicit the departure of other employees while still working for the employer; or (4) carry away confidential information, such as customer lists." *Diakiw*, 2023 WL 8041403, at *9. In reviewing the summary judgment evidence, we note the following regarding Dockside's allegations against Walker. First, Dockside did not provide any evidence that Walker appropriated customer lists or trade secrets while General Manager. In his deposition, L.P Carlson admitted that all

19

Dockside's sales are public record, and Dockside still controlled Walker's phone after he resigned as General Manager.

Second, in support of its allegation that Walker solicited employees, Dockside provided L.P. Carlson's affidavit and phone records between the employees and Walker. This evidence did not include the alleged content of any conversations between Walker and his coworkers. It is undisputed that Walker was Dockside's General Manager when these conversations occurred.

Third, regarding soliciting customers for new a dealership, Dockside provided phone records showing Walker and Brown were in frequent communication. Nevertheless, the bare phone records do not show what Walker and Brown discussed while Walker was Dockside's General Manager. In his deposition, Dockside's Larry Carlson agreed that Dockside's phone records do not show what the parties to a call discussed on the phone. Appellees provided Brown's deposition testimony, which shows that Brown was in frequent contact with Dockside about why Dockside had not turned over the proceeds from the sale of a boat that it sold on consignment to him. Dockside did turn the proceeds over to Brown in March 2020. In its petition, Dockside admits that Brown's share of the money from the sale of his boat should have been turned over to him after Dockside completed the sale, but Dockside accused Walker of hiding information about the sale of Brown's boat and claimed that Walker did so for his benefit.

Finally, Dockside contends that Walker breached his fiduciary duty by soliciting customers while still working as General Manager. Dockside provided excerpts from Walker's deposition, in which Walker admits that he spoke to customers and boat manufacturers about opening his own boat dealership while employed as Dockside's General Manager. Walker's deposition creates a material fact issue as to whether Walker breached his fiduciary duty to Dockside by soliciting customers to open a new, competing dealership while employed as Dockside's General Manager. *See Diakiw*, 2023 WL 8041403, at *9 ("To be sure, once employees resign, they may actively compete with their former employer. The right to prepare to compete notwithstanding, if the nature of a party's preparation to compete is significant, it may give rise to a cause of action for breach of fiduciary duty.") (citation omitted).

Viewing the summary judgment evidence in the light most favorable to the nonmovant, we conclude there is a genuine issue of material fact on whether Walker breached his fiduciary duty to Dockside. *See Johnson*, 73 S.W.3d at 201; *Parker*, 514 S.W.3d at 219-20. The evidence created a genuine issue of material fact on Dockside's breach of fiduciary duty claim, and Walker failed to meet his burden to show he was entitled to a summary judgment on Dockside's breach of fiduciary duty claim. *See* Tex. R. Civ. P. 166a(i); *Parker*, 514 S.W.3d at 219.

Therefore, we sustain Dockside's third issue as to Walker's alleged breach of fiduciary duty.

## C. Dockside failed to present more than a scintilla of summary judgment evidence supporting its knowing participation claims against Brown and HTX.

"The elements of a knowing-participation claim are: (1) the existence of a fiduciary duty owed by a third party to the plaintiff; (2) the defendant knew of the fiduciary relationship; and (3) the defendant was aware of his participation in the third party's breach of its duty." *Straehla v. Al Glob. Servs., LLC.*, 619 S.W.3d 795, 804 (Tex. App—San Antonio 2020, pet. denied) (citation omitted). "Knowing participation in breach of fiduciary duty is a derivative claim, requiring an underlying breach of fiduciary duty, in which the defendant knowingly participates." *Id.* (citation omitted). Brown and HTX's knowing participation is tied to Walker's breach of fiduciary duty as Dockside's employee.

As to Brown and HTX, Dockside alleged that they:

participated in Walker's breach of his fiduciary duties to Dockside because: (a) a fiduciary relationship existed between Walker and Dockside; (b) Brown and HTX, by virtue of Brown's knowledge, knew of the fiduciary relationship between Dockside and Walker; and (c) Brown and HTX, by virtue of Brown's knowledge, were aware they were participating in the breach of that fiduciary relationship.

In support of their Motion for Summary Judgment on this issue, HTX and Brown point to Brown's deposition in which Brown testified Dockside owed him money and that his conversations with Walker and other Dockside representatives

22

related to money owed for the sale of his boat. Dockside admits in its pleadings that it owed Brown this money. Appellees also included deposition testimony from Carlson, Walker, and McDevitt in their summary judgment evidence. In Carlson's deposition, he conceded that the phone records do not show the content of Walker's and Brown's conversations. Walker testified he did not talk with Brown about starting his own dealership before he resigned at Dockside. McDevitt testified the decision to find another exclusive retailer for MasterCraft was "likely" not made until after MasterCraft terminated its relationship with Dockside, that Brown had previously approached MasterCraft regarding opening a dealership with MasterCraft "somewhere in the State[,]" and that Walker was not involved in any conversations between MasterCraft and Brown. McDevitt testified that Walker did not become involved with any conversations until after he left his employment at Dockside.

In its response to Appellees' Motion for Summary Judgment, Dockside contends "Brown was an active participant in Walker's breaches of fiduciary duty[,]" and cites to Carlson's affidavit and phone and text records between Walker and Brown. In his affidavit, Carlson states that Walker and Brown engaged in extensive phone or text conversations in Spring of 2020, sometimes right after Walker spoke to a MasterCraft representative. In his affidavit, Carlson states that in Brown's deposition, Brown testified he wanted to become an exclusive retailer of MasterCraft. However, in its summary judgment response, Dockside did not attach

23

Brown's deposition to support Carlson's claim. Dockside also attached a financing application for HTX's formation, but the record does not include a signature line for Walker on the forms. The application was also submitted after Walker resigned from Dockside.

Dockside had the burden to present more than a scintilla of evidence raising a genuine fact issue on the challenged elements of its claims against Brown and HTX to defeat Appellees' No-Evidence Motion for Summary Judgment. *See* Tex. R. App. P. 166a(i). The appellate record does not show that Dockside did so. Since Dockside failed to present more than a scintilla of evidence that would raise a genuine issue of material fact on the challenged elements of the knowing participation claim against Brown and HTX, the trial court did not err in granting summary judgment on that claim. *See id.*

Since our analysis of the No-Evidence Motion for Summary Judgment issue resolves Dockside's knowing participation claim against Brown and HTX, we need not address Appellees' arguments under their traditional summary judgment motion. *See Ford Motor Co.,* 135 S.W.3d at 600; *Merriman*, 407 S.W.3d at 248 ("[I]f the non-movant fails to produce legally sufficient evidence to meet his burden as to the no-evidence motion, there is no need to analyze whether the movant satisfied its burden under the traditional motion."). We overrule this issue as to Brown and HTX.

# VI. ANALYSIS: ISSUE FOUR

In its fourth issue on appeal, Dockside contends that the trial court erred by granting summary judgment because genuine issues of material fact existed as to whether Walker, Brown and HTX willfully or intentionally interfered with Dockside's MasterCraft contract. On appeal, Dockside also argues the trial court erred in granting Appellees' summary judgment because issues of material fact exist for its claim of tortious interference against Walker. Dockside contends that the evidence shows that Walker helped MasterCraft steal the two Nautique boats before he resigned and transfer the title to the two boats to HTX "under the auspices of his title as 'General Manager.'" According to Dockside, Walker intentionally destroyed Dockside's relationship with MasterCraft as a result of Walker's text messages and emails to MasterCraft, "hiding" pertinent information about MasterCraft from Dockside's owners, and alleging that Dockside was "double flooring" the two Nautique boats. Dockside contends that because of Walker's actions and his allegations of "double flooring" of the two Nautique boats, MasterCraft terminated its retail relationship with Dockside and entered an exclusive relationship with HTX, causing damages in lost sales. Dockside also alleges that Walker solicited Dockside customers to start a new dealership, held discussions, and solicited Dockside employees to leave Dockside and go to work with a new competing boat dealership. As for Brown and HTX, Dockside alleges that Walker, while employed by

25

Dockside, communicated with Brown often by either telephone or text messages about starting a new competing dealership, and that Walker joined a financial application with Brown and HTX, while still "act[ing] and sign[ing] documents" as Dockside's General Manager after he resigned.

## A. Tortious Interference with Existing Contract

"A party to a contract has a cause of action for tortious interference against any third person who wrongly induces another contracting party to breach the contract." *Swank v. Sverdlin*, 121 S.W.3d 785, 799 (Tex. App.—Houston [1st Dist.] 2003, pet. denied); *see Holloway v. Skinner*, 898 S.W.2d 793, 794-95 (Tex. 1995). The elements of tortious interference with an existing contract are (1) there exists an existing contract subject to interference, (2) a willful and intentional act of interference with the contract, (3) that proximately caused the plaintiff's injury, and (4) caused actual damages or loss. *Prudential Ins. Co. of Am. v. Fin. Rev. Servs., Inc.*, 29 S.W.3d 74, 77 (Tex. 2000). A defendant may obtain summary judgment dismissing a claim of tortious interference with an existing contract by disproving one or more elements of the claim as a matter of law. *Powell Indus., Inc. v. Allen*, 985 S.W.2d 455, 456 (Tex. 1998).

At issue is whether this constitutes some evidence of Appellees' "willful and intentional act of interference." Texas courts have held that to satisfy this element of the cause of action for tortious interference, a party must be more than a willing

26

participant; it must knowingly induce one of the contracting parties to breach its obligations. *See Browning-Ferris, Inc. v. Reyna*, 865 S.W.2d 925, 927 (Tex. 1993); *John Paul Mitchell Sys. v. Randalls Food Mkts.*, 17 S.W.3d 721, 730 (Tex. App.—Austin 2000, pet. denied). To establish an actionable "willful and intentional act," the evidence must show the defendant's influence and "knowing inducement" of the contract obligor's wrongful action. *Browning-Ferris*, 865 S.W.2d at 927.

**B. As a Dockside employee, Walker cannot be liable for tortious interference with the Dockside and MasterCraft contract.**

This Court has previously explained that generally speaking an employee of a contracting party cannot tortiously interfere with his employer's contract. *Brown v. CB&I, Inc.*, No. 09-12-00521-CV, 2014 WL 172413, at *8 (Tex. App.—Beaumont Jan. 16, 2014, no pet.) (mem. op.) (citations omitted). In *Brown*, we stated as follows,

> The nature of a tortious interference claim is such that "a person must be a stranger to a contract to tortiously interfere with it[.]" Generally, a party to a contract cannot tortiously interfere with its own contract. By extension, "a contracting party's agent or employee acting in the party's interests cannot interfere with the party's contract."

*Id.*; *see also Cleveland Reg'l Med. Ctr., L.P. v. Celtic Props., L.C.*, 323 S.W.3d 322, 346 (Tex. App.—Beaumont 2010, pet. denied) (citations omitted).

Here, it is undisputed that Walker was Dockside's employee when Dockside alleges that Walker interfered with Dockside's and Mastercraft's agreement. Walker, as an employee and general manager of Dockside, was not a stranger to the

contract and he cannot be liable for tortious inference in Dockside's contract with MasterCraft. *See Brown*, 2014 WL 172413, at \*8; *Cleveland Reg'l Med. Ctr., L.P.*, 323 S.W.3d at 346; *see also Hussong v. Schwan's Sales Enters.*, 896 S.W.2d 320, 327 (Tex. App.—Houston [1st Dist.] 1995, no writ) ("[A]n agent cannot be personally liable for tortious interference with its principal's contracts.").

**C. Dockside has failed to present more than a scintilla of evidence showing a genuine issue of material fact exists as to its tortious interference claim against Brown and HTX.**

As to Brown and HTX's alleged interference, Dockside has also failed to demonstrate that there is a genuine issue of material fact regarding a "willful and intentional act of interference" with Dockside's contract. *See Prudential*, 29 S.W.3d at 77 (outlining requisite elements of tortious interference claim, including "willful and intentional act of interference"). "Texas courts have held that to satisfy this element of the cause of action for tortious interference, a party must be more than a willing participant; it must knowingly induce one of the contracting parties to breach its obligations." *John Paul Mitchell Sys.*, 17 S.W.3d at 730 (citing *Browning-Ferris,* 865 S.W.2d at 927). To establish an actionable "willful and intentional act," the evidence must show the defendant's influence and "knowing inducement" of the contract obligor's wrongful action. *Browning-Ferris*, 865 S.W.2d at 927. As we have already explained, Dockside's phone and text message records between Brown and Walker do not show what Walker and Brown discussed. In fact, Brown testified

28

in his deposition that the only conversations he had were with Dockside's Walker, Jeff Kaiser, and Cheryl, which concerned his attempts to have the proceeds from the sale of his boat paid over to his bank—no conversations about the MasterCraft contract with Dockside at issue here. HTX's financing documents, which Dockside attached to its response, do not show that Walker is listed as an applicant. Further, the application was filed after Walker resigned from Dockside.

We conclude that the trial court did not err in finding there were no material issues of fact as to Dockside's tortious interference claim against Walker, Brown and HTX. *See* Tex. R. Civ. P. 166a(c), (i). We overrule Dockside's fourth issue.

We need not address Appellees' arguments under their traditional summary judgment motion. *See Ford Motor Co.*, 135 S.W.3d at 600; *Merriman*, 407 S.W.3d at 248.

## VII. ISSUE FIVE

In its final issue, Dockside argues the trial court erred by granting summary judgment as to Walker, Brown and HTX because a material fact issue exists as to Dockside's claim of civil conspiracy. Mirroring the same allegations against Dockside, Brown and HTX as alleged in issue four, Dockside contends that "Appellees' traditional motion for summary judgment with respect to conspiracy has the look and feel of a trial on the factual merits rather than a motion for summary judgment[,] and [r]ather than focusing on a claimed absence of a genuine issue of

material fact, Appellees argue the facts as they proffered them without paying any heed to the facts Dockside tendered to the Court."

## A. Civil Conspiracy

A plaintiff must prove the following requisite elements to establish a civil conspiracy claim:

> (1) a combination of two or more people; (2) to accomplish an unlawful purpose or a lawful purpose by unlawful means; (3) a meeting of the minds on the object or course of action; (4) one or more unlawful, overt acts; and (5) the plaintiff suffered injury as a proximate result of the wrongful act.

*Ins. Co. of N. Am. v. Morris*, 981 S.W.2d 667, 675 (Tex. 1998); *Walker v. Hartman*, 516 S.W.3d 71, 81 (Tex. App.—Beaumont 2017, pet. denied). Civil conspiracy is not an independent tort, but exists so that upon proving a conspiracy, a plaintiff may obtain a remedy against any co-conspirators involved in the underlying tort. *Hartman v. Walker*, No. 09-21-00084-CV, 2023 WL 5282443, at *13 n.50 (Tex. App.—Beaumont Aug. 17, 2023, no pet.) (mem. op.) (citing *Agar Corp., Inc. v. Electro Circuits Int'l, LLC*, 580 S.W.3d 136, 141 (Tex. 2019)).

Dockside's First Amended Petition alleges the same actions by Walker, Brown and HTX for tortious interference to claim they are liable in an action for civil conspiracy. We need not list them again. Our review shows that Dockside has failed to meet its burden to raise a genuine issue of material fact as to the underlying tortious interference claim. *See Painter*, 561 S.W.3d at 130; *see also* Tex. R. Civ. P.

30

166a(i). Having failed to establish a tortious interference claim, there can be no civil conspiracy to commit tortious interference. *See Walker* at 81.

**B. Dockside failed to present more than a scintilla of evidence to show the requisite element of a meeting of the minds.**

In its First Supplemental Petition, Dockside alleged that the three defendants "committed an unlawful overt act to further the object or course of action, which was to take away the business of Dockside Marine from Walker's employer." Assuming that there was an underlying tort to support a claim of civil conspiracy, a meeting of the minds is a requisite element of a civil conspiracy. *See Walker*, 516 S.W.3d at 81. Dockside failed to show a material fact issue as to whether Appellees had a meeting of the minds to interfere with Dockside's contract with MasterCraft.

As noted above, Dockside's phone and text records do not evidence there was a conspiracy between Appellants to interfere with the contract that Dockside had with Mastercraft—that is, evidence that a meeting of the minds existed between Appellants on a course of action consisting of one or more overt acts since the evidence that Dockside presented does not show what Walker and Brown actually discussed. The financial records that Dockside provided to support its response also do not show that Walker was listed as an applicant when HTX applied to become a MasterCraft dealer, and the records that Dockside produced also show that Walker left Dockside before HTX applied with MasterCraft and sought to become one of its authorized dealers. For these reasons, we hold that the evidence Dockside presented

31

with its response fails to demonstrate that a genuine issue of material fact exists on its civil conspiracy claim. *See Painter*, 561 S.W.3d at 130; *see also* Tex. R. Civ. P. 166a(i).

Because we conclude the trial court properly granted the Appellees no-evidence motion, we need not address the arguments the appellant raises claiming the trial court erred in granting Appellants' traditional motion for summary judgment on Dockside's claim for civil conspiracy. *See Ford Motor Co.*, 135 S.W.3d at 600; *Merriman*, 407 S.W.3d at 248.

## VIII. CONCLUSION

Reviewing the summary judgment evidence presented by both sides, we conclude that Appellees are not entitled to prevail as to each of Dockside's claims. *See Tex. Workers' Comp. Comm'n v. Patient Advocates*, 136 S.W.3d 643, 648 (Tex. 2004). With respect to Dockside's claims for theft and conversion, we conclude the trial court erred in granting Walker, Brown's and HTX's motions for summary judgment. For that reason, we sustain Docksides first two issues. We sustain Dockside's third issue in part, to the extent that Dockside argues the trial court erred in granting Dockside's breach of fiduciary duty claims against Walker. That said, we overrule Dockside's third issue to the extent that Dockside argues that the evidence shows that Walker knowingly participated in his breach of a fiduciary duty to Dockside. Dockside's fourth and fifth issues—which argue the trial court erred in

32

granting summary judgment on Dockside's tortious interference and civil conspiracy claims against Walker, Brown and HTX—are overruled because Dockside presented no evidence to support these claims.

The trial court's judgment is affirmed in part, reversed in part, and remanded to the trial court for further proceedings consistent with the Court's opinion.

AFFIRMED IN PART, REVERSED AND REMANDED IN PART.

JAY WRIGHT
Justice

Submitted on April 25, 2024
Opinion Delivered June 27, 2024

Before Horton, Johnson and Wright, JJ.